# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| **JONATHAN GUY, individually and on behalf of all persons similarly situated,** : | Civil Action No. 4:18-cv-216 |
| **Plaintiff,** : | Class Action |
| v. : | Jury Trial Demanded |
| **NEBRASKA FURNITURE MART, INC. and FORD STORAGE & MOVING, CO.,** : | |
| **Defendants.** : | |

## CLASS ACTION COMPLAINT

Plaintiff Jonathan Guy ("Plaintiff" or "Guy"), through his undersigned counsel, individually and on behalf of all others similarly situated, files this class action complaint against Defendants Nebraska Furniture Mart, Inc. ("NFM") and Ford Storage & Moving., Co. ("Ford Storage") seeking all available relief under Iowa state law. Plaintiff alleges that NFM and Ford Storage improperly classified him and other similarly situated drivers as independent contractors when they were, in fact, employees of NFM and Ford Storage within the meaning of Iowa law. Plaintiff alleges that, as a result of this misclassification, he was subject to unlawful deductions from his pay in violation of Iowa law. The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

## JURSIDICTION AND VENUE

1.  This Court has personal jurisdiction over Plaintiff and the class he seeks to represent because they are citizens of the state of Iowa and/or performed work in Iowa.

2. This Court has personal jurisdiction over Ford Storage because Ford Storage does business in the state of Iowa and because its conduct in the state of Iowa underlies all claims in this suit.

3. This Court has personal jurisdiction over NFM because it does business in Iowa, has physical locations in Iowa, and because its conduct in the state of Iowa underlies all claims in this suit.

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, since there is diversity between the parties and since the amount in controversy exceeds $75,000.00.

## PARTIES

5. Defendant Ford Storage is a company having its principal place of business in Omaha, Nebraska. Ford Storage provides delivery services in various states throughout the Midwest, including Iowa. Ford Storage's clients include Nebraska Furniture Mart.

6. Defendant Nebraska Furniture Mart, Inc. is a Nebraska corporation. In 2000, NFM purchased Homemakers Furniture. Through Homemakers Furniture, NFM operates a large warehouse in Urbandale, Iowa. Furthermore, NFM has operated a store in Clive, Iowa since 2001.

7. Plaintiff Jonathan Guy is an individual residing in Des Moines, Iowa. Between approximately May 2017 to May 11, 2018, Guy worked for Defendants as a delivery driver, performing deliveries of furniture and appliances for NFM and Ford Storage.

8. While working for Ford Storage, Guy worked out of an NFM warehouse in Urbandale, Iowa.

## STATEMENT OF FACTS

9. NFM is a large retailer that sells furniture, flooring, appliances, and electronics throughout North America.

10. In 2001, NFM purchased Homemakers Furniture. Homemakers Furniture, however, has continued to operate under its own name.

11. Homemakers Furniture, as a part of NFM, operates a warehouse in Urbandale, Iowa.

12. Ford Storage is in the business of providing delivery of retail merchandise for large retail stores, such as NFM. To carry out deliveries, Ford Storage purports to contract with individuals such as the Plaintiff to drive a delivery truck and to deliver merchandise to the retail stores' customers.

13. To perform this work, NFM and Ford Storage require Plaintiff and its other delivery drivers to sign an agreement which states that the delivery drivers are independent contractors.

14. Although Defendants classified Plaintiff, as well of the other members of the class, as independent contractors, the reality of the relationship between Defendants and these delivery drivers is one of employment. Indeed, Plaintiff and other class members were required by Ford Storage to fill out a form labeled as an "Employment Application" prior to being hired.

15. Moreover, in addition to using Plaintiff and the other class members to perform deliveries, both Defendants use workers that they classify as employees to perform the same or similar deliveries to NFM customers. For example, prior to contracting with Ford Storage, Plaintiff spent several months performing deliveries out of the same facility as an employee of Ford Storage.

16. The following facts demonstrate that both Defendants exert significant control over the work performed by Plaintiff and the other class members:

   a. Plaintiff, as well as numerous other class plaintiffs, was required to report to a warehouse maintained by NFM in Urbandale, Iowa by 6:30 a.m., five to six days a week, at which time he was provided a manifest listing the deliveries for that day.

   b. The manifest lists deliveries in an order dictated by Defendants complete with time windows in which deliveries must be made.

   c. Defendants required Plaintiff, as well as the other class members, to display Ford Storage insignia on trucks they used to perform deliveries.

   d. Plaintiff, as well as the other class members, was required to wear a uniform consisting of a Homemakers Furniture shirt, a Homemakers Furniture hat, and brown pants. Defendants would fine Plaintiff and the other class members if they were caught out of uniform.

   e. Defendants required Plaintiff and the other class members to conform to NFM and Ford Storage rules regarding their appearance and conduct during deliveries.

   f. Defendants required Plaintiff and the other class members to obtain Defendants' approval before using anyone to help them perform deliveries. Both NFM and Ford Storage had could prohibit the use of a helper or secondary driver terminate and would fine Plaintiff and the other class members if they used personnel not approved by Defendants.

   g. Defendants unilaterally determined the rates that Plaintiff and the other class members are paid for performing deliveries. .

    h.    Plaintiff, as well as other class plaintiffs, was required to call customers 30 minutes before each delivery.

    i.    Plaintiff, as well as other class plaintiffs, was required to log the beginning and end of each delivery on a system maintained by Defendants.

    j.    Plaintiff, as well as other class members, was required to be in constant contact with NFM and Ford Storage dispatchers and received phone calls from NFM and Ford Storage if he was running late for a delivery or there was a customer complaint.

    k.    Plaintiff and the other class members were required to attend morning meetings with NFM and Ford Storage supervisors.

    l.    Plaintiff and the other class members were told by Defendants that they could not identify themselves to customers as contractors.

17.    If Plaintiff, as well as other class members, was sick or otherwise missed a day of work, Defendants would have a Ford Storage employee drive their truck and then deduct approximately $200 from the pay of the delivery driver for a "dropped load."

18.    Ford Storage requires delivery drivers that it contracts with to have or lease a truck that meets Ford Storage's specifications.

19.    Defendants kept track of Plaintiff and its other delivery drivers' performance through customer ratings.

20.    Defendants required delivery drivers that it contractors with to obtain insurance, including automobile liability, commercial general liability, cargo liability, commercial umbrella, and worker's compensation at levels dictated by Ford Storage.

21. Defendants required Plaintiff and the other class members to list NFM and Ford Storage as additional insured's on and include a waive of their right to recover from NFM and Ford Storage on their worker's compensation policy.

22. Plaintiff, as well as the other class plaintiffs, performed work with is integral to the business of Ford Storage – i.e., they perform delivery services -- and Ford Storage is engaged in the business of providing delivery services to its customers.

23. Plaintiff, as well as the other class plaintiffs, performed work with is integral to the business of NFM, which promises its customers home delivery of their products and advertises the quality of its own delivery services.

24. Defendants made deductions from the compensation paid to Plaintiff and the other drivers it contracts with at its own discretion for truck damages, which are leased from Ford Storage, damage to customer property, damage to or loss of furniture or merchandise, refunds of customer delivery charges, radio and beeper charges, escrow fund charges, and liability insurance premiums.

25. Defendants made further deductions of things such as $250 for a dropped load, $500 for a dropped load the day before or day after a holiday, $250 for using a non-qualified driver, $250 for using an undocumented helper, $375 for a lost tablet, $30 a day for a missing helper, $50 for failure to turn in a maintenance form, $50 for failing to leave the dock by 8:00 a.m., $50 for being out of uniform, and $25 for failing to properly bag and stack bedding.

26. Defendants required Plaintiff and the other delivery drivers it contracts with to maintain an escrow fund or reserve fund of approximately $2,000 to cover damage claims.

27. Defendants may terminate the contract they have with Plaintiff and the other class members for any reason. Indeed, when Plaintiff was terminated, he was told by a Ford Storage manager that it did not require a reason to terminate him.

28. NFM employed supervisors whose job it was to manage the deliveries performed by Plaintiff and the other class members.

## CLASS ALLEGATIONS

29. Plaintiffs bring this action individually and on behalf of a class of individuals similarly situated pursuant to Fed. R. Civ. P. 23.

30. The class of individuals similarly situated are all individuals like the Plaintiff who have performed or are currently performing delivery services for Defendants as delivery drivers and who were classified as independent contractors within the State of Iowa.

31. The class meets all the prerequisites of Rule 23. At least 40 drivers have performed delivery services for Defendants and were classified as independent contractors during the applicable statutory period.

32. The Plaintiff's claims related to his misclassification are not only typical of the claims of the putative class members, they are identical.

33. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff's counsel are competent and experienced in litigating large wage and hour class and collective actions.

34. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the class predominate over any questions affecting only individual class members.

35. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The class is readily identifiable from Defendants' own records. Prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants.

36. A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the class members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

37. Without a class action, Defendants will retain the benefit of its wrongdoing, which will result in further damages to Plaintiff and the class. Plaintiff envisions no difficulty in the management of this action as a class action.

## COUNT I
### Violation of the Iowa Wage Payment Collection Law
### (On Behalf of Plaintiff and the Class)

38. All previous paragraphs are incorporated as though fully set forth herein.

39. Iowa's Wage Payment Collection Law ("WPCL") requires an employer to pay all wages due to its employees. Iowa Code § 91A.5.

40. Defendant Ford Storage is subject to the wage requirements of the WPCL because

it is an "employer" under Iowa Code § 91A.2.

41. Defendant Nebraska Furniture Mart is subject to the wage requirements of the WPCL because it is an "employer" under Iowa Code § 91A.2

42. At all relevant times, Plaintiff and the class members are covered employees entitled to the above-described WPCL protections. Iowa Code § 91A.2.

43. Plaintiff and the class members are not exempt from the requirements of the WPCL for wage payments.

44. Defendants, pursuant to their policies and practices, made deductions from Plaintiff and the class members compensation that violate WPCL. Iowa Code § 91A.5.

45. Pursuant to Iowa Code § 91A.8, an employer, such as Ford Storage and Nebraska Furniture Mart, who fails to pay an employee wages in conformance with the WPCL shall be liable to the employee for the wages or expenses that were not paid, interest, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

46. In violating Iowa law, Defendants acted willfully and with reckless disregard of clearly applicable WPCL provisions.

## COUNT II
## Unjust Enrichment Under Iowa Law
## (On Behalf of Plaintiff and the Class)

47. All previous paragraphs are incorporated as though fully set forth herein.

48. Defendants have been unjustly enriched through the use of independent contractor agreements that violate Iowa public policy and are unenforceable.

49. At all relevant times, Defendants devised and implemented a plan to increase its earnings and profits by making deductions from Plaintiff and the class members' pay, and by

requiring Plaintiff and class members to pay for Ford Storage's own business expenses, including worker's compensation insurance that Ford Storage is obligated to provide as an employer.

50. It would be inequitable for Defendants to retain the benefit of Plaintiff's and the class members' services without paying them wages as required by law.

51. Plaintiff and the Class are entitled to judgment in an amount equal to the benefits unjustly retained by Defendants.

## JURY DEMAND

Plaintiffs request a trial by jury on all of their claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief on behalf of themselves and all others similarly situated:

a. A declaration that Nebraska Furniture Mart and Ford Storage misclassified Plaintiff and class members as independent contractors instead of employees;

b. An order permitting this litigation to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class;

c. Designation of Plaintiff as a representative of the Rule 23 Class, and counsel of record as Class Counsel;

d. Injunctive relief requiring Ford Storage to comply with all applicable federal and state laws and cease their illegal practices;

e. A judgment in favor of Plaintiff and Class Members for all penalties and liquidated damages allowed by law;

f. An award of pre-judgment and post-judgment interest to Plaintiff and Class Members;

g. An award of attorney's fees and costs as provided by law; and

h. Any other relief to which the Plaintiffs and Class Members may be entitled.

Dated:  July 2, 2018               Respectfully submitted,

                                   JONATHAN GUY, individually and on
                                   behalf of all persons similarly situated,

                                   By his attorneys,

                                   */s/Nate Willems*
                                   Nate Willems
                                   RUSH & NICHOLSON, P.L.C.
                                   P.O. Box 637
                                   Cedar Rapids, IA 52406
                                   319-363-5209
                                   Fax: 319-363-6664
                                   nate@rushnicholson.com

                                   Harold Lichten*
                                   Benjamin J. Weber*
                                   LICHTEN & LISS-RIORDAN, P.C.
                                   729 Boylston St., Suite 2000
                                   Boston, MA 02116
                                   Telephone: (617) 994-5800
                                   Facsimile: (617) 994-5801
                                   hlichten@llrlaw.com
                                   bweber@llrlaw.com

                                   Sarah R. Schalman-Bergen*
                                   Camille Fundora*
                                   BERGER & MONTAGUE, P.C.
                                   1622 Locust Street
                                   Philadelphia, PA 19103-6365
                                   (215) 875-3000
                                   (215) 875-4604
                                   sschalman-bergen@bm.net
                                   cfundora@bm.net

                                   *Attorneys for Plaintiff*
                                   *and the Proposed Class*
                                   *\*Application for Admission to be filed*