**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| **JONATHAN GUY, PETER COOPER, TYRONE JOHNSON, ANTHONY GRUBER, BRIAN ST. AUBIN, CODY PETEK, DUSTY PETEK, VINCENT BOOTHROYD, MICAH MOSS, ERIK IRVING, RICKY HUTCHINSON, WILLIE CHISM, CHAD PORTER, JACOB BROOKS, KEITH BARNETT, ADAM NELSON, AARON SWALES, and RYAN BROCKMAN,** | : | **Civil Action No. 4:18-cv-216** |
| | : | **Jury Trial Demanded** |
| | : | **LEAVE TO FILE GRANTED ON OCTOBER 17, 2019 (ECF NO. 79)** |
| **Plaintiffs,** | : | |
| **v.** | | |
| **FORD STORAGE & MOVING, CO.**[1] | | |
| **Defendant.** | | |

## AMENDED COMPLAINT

Plaintiffs through their undersigned counsel, individually and on behalf of all others similarly situated, file this complaint against Defendant Ford Storage & Moving., Co. ("Ford Storage") seeking all available relief under Iowa state law. Plaintiffs allege that Ford Storage improperly classified them as independent contractors when they were, in fact, employed by Ford Storage, pursuant to Iowa law. Plaintiffs allege that, as a result of this misclassification, they were subject to unlawful deductions from their pay in violation of Iowa law. The following

[1] Plaintiffs claims brought against Ford Storage were originally brought on behalf of class, of which all of the individual plaintiffs were members. Due to tolling from the date of filing of the original complaint on July 2, 2018 (ECF No. 1), all of the individual plaintiffs assert their claims against Ford Storage going back to July 2, 2016.

allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

**JURSIDICTION AND VENUE**

1. This Court has personal jurisdiction over Plaintiffs because they are citizens of the state of Iowa and performed work in Iowa.

2. This Court has personal jurisdiction over Ford Storage, a Nebraska corporation, because Ford Storage does business in the state of Iowa and because its conduct in the state of Iowa underlies all claims in this suit.

3. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 over the claims of Plaintiff Jonathan Guy, since there is diversity between the parties and since the amount in controversy with respect to his claims exceeds $75,000.00. Upon information and belief, Guy's damages include approximately $35,000 in deductions, $35,000 in liquidated damages pursuant to Iowa Code § 91A.8, and $9,000 in his share of attorney's fees.[2]

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 over the claims of Plaintiff Anthony Gruber, since there is diversity between the parties and since the amount in controversy with respect to his claims exceeds $75,000.00. Upon information and belief, Gruber's damages include approximately $140,000 in deductions, $140,000 in liquidated damages pursuant to Iowa Code § 91A.8, and $9,000 in his share of attorney's fees.

[2] "Statutory attorney fees do count toward the jurisdictional minimum for diversity jurisdiction." Crawford v. F. Hoffman-La Roche Ltd, 267 F.3d 760, 766–67 (8th Cir. 2001); Feller v. Hartford Life and Acc. Ins. Co., 817 F.Supp.2d 1097, 1104 (S.D. Iowa 2010). When including attorney's fees, the total estimated attorney fees should be calculated and then proportionally divided amongst the plaintiffs. District courts in the Eighth Circuit are split regarding whether future attorney fees may be included in the amount in controversy. Feller, 817 F.Supp.2d at 1105, 1007 (also noting a circuit split on the issue). Conservatively, however, Plaintiffs have included only their attorney's fees to date, divided proportionally among all plaintiffs, and not included future fees for the purposes of meeting the amount in controversy requirement.

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 over the claims of Plaintiff Brian St. Aubin, since there is diversity between the parties and since the amount in controversy with respect to his claims exceeds $75,000.00. Upon information and belief, St. Aubin's damages include approximately $120,000 in deductions, $120,000 in liquidated damages pursuant to Iowa Code § 91A.8, and $9,000 in his share of attorney's fees.

6. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 over the claims of Plaintiff Chad Porter, since there is diversity between the parties and since the amount in controversy with respect to his claims exceeds $75,000.00. Upon information and belief, Porter's damages include approximately $70,000 in deductions, $70,000 in liquidated damages pursuant to Iowa Code § 91A.8, and $9,000 in his share of attorney's fees.

7. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 over the claims of Plaintiff Dusty Petek, since there is diversity between the parties and since the amount in controversy with respect to his claims exceeds $75,000.00. Upon information and belief, Dusty Petek's damages include approximately $35,000 in deductions, $35,000 in liquidated damages pursuant to Iowa Code § 91A.8, and $9,000 in his share of attorney's fees.

8. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 over the claims of Plaintiff Eric Irving, since there is diversity between the parties and since the amount in controversy with respect to his claims exceeds $75,000.00. Upon information and belief, Irving's damages include approximately $60,000 in deductions, $60,000 in liquidated damages pursuant to Iowa Code § 91A.8, and $9,000 in his share of attorney's fees.

9. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 over the claims of Plaintiff Jacob Brooks, since there is diversity between the parties and since the amount in controversy with respect to his claims exceeds $75,000.00. Upon information and

belief, Brooks' damages include approximately $45,000 in deductions, $45,000 in liquidated damages pursuant to Iowa Code § 91A.8, and $9,000 in his share of attorney's fees.

10. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 over the claims of Plaintiff Keith Barnett, since there is diversity between the parties and since the amount in controversy with respect to his claims exceeds $75,000.00. Upon information and belief, Barnett's damages include approximately $130,000 in deductions, $130,000 in liquidated damages pursuant to Iowa Code § 91A.8, and $9,000 in his share of attorney's fees.

11. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 over the claims of Plaintiff Lewis Fondren, since there is diversity between the parties and since the amount in controversy with respect to his claims exceeds $75,000.00. Upon information and belief, Fondren's damages include approximately $130,000 in deductions, $130,000 in liquidated damages pursuant to Iowa Code § 91A.8, and $9,000 in his share of attorney's fees.

12. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 over the claims of Plaintiff Micah Moss, since there is diversity between the parties and since the amount in controversy with respect to his claims exceeds $75,000.00. Upon information and belief, Moss's damages include approximately $130,000 in deductions, $130,000 in liquidated damages pursuant to Iowa Code § 91A.8, and $9,000 in his share of attorney's fees.

13. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 over the claims of Plaintiff Ricky Hutchinson, since there is diversity between the parties and since the amount in controversy with respect to his claims exceeds $75,000.00. Upon information and belief, Hutchinson's damages include approximately $130,000 in deductions, $130,000 in liquidated damages pursuant to Iowa Code § 91A.8, and $9,000 in his share of attorney's fees.

14. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 over the claims of Plaintiff Willie Chism, since there is diversity between the parties and since the amount in controversy with respect to his claims exceeds $75,000.00. Upon information and belief, Chism's damages include approximately $130,000 in deductions, $130,000 in liquidated damages pursuant to Iowa Code § 91A.8, and $9,000 in his share of attorney's fees.

15. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 over the claims of Plaintiff Ryan Brockman, since there is diversity between the parties and since the amount in controversy with respect to his claims exceeds $75,000.00. Upon information and belief, Brockman's damages include approximately $40,000 in deductions, $40,000 in liquidated damages pursuant to Iowa Code § 91A.8, and $9,000 in his share of attorney's fees.

16. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 over the claims of Plaintiff Vincent Boothroyd, since there is diversity between the parties and since the amount in controversy with respect to his claims exceeds $75,000.00. Upon information and belief, Boothroyd's damages include approximately $45,000 in deductions, $45,000 in liquidated damages pursuant to Iowa Code § 91A.8, and $9,000 in his share of attorney's fees.

17. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 over the claims of Plaintiff Adam Nelson, since there is diversity between the parties and since the amount in controversy with respect to his claims exceeds $75,000.00. Upon information and belief, Boothroyd's damages include approximately $56,000 in deductions, $56,000 in liquidated damages pursuant to Iowa Code § 91A.8, and $9,000 in his share of attorney's fees.

18. Upon information and belief, though there is diversity between the parties, the current amount in controversy with respect to the claims of Plaintiffs Cody Petek, Peter Cooper, Tyrone Johnson, and Aaron Swales (who are all residents of Iowa) does not exceed $75,000.00.

This Court, however, has supplemental jurisdiction over the claims of those Plaintiffs pursuant to 28 U.S.C. § 1367.

**PARTIES**

19. Defendant Ford Storage is a Nebraska corporation which has its principal place of business in Omaha, Nebraska. Ford Storage provides delivery services in various states throughout the Midwest, including Iowa. Ford Storage's clients include Nebraska Furniture Mart ("NFM") and Homemakers.

20. Plaintiff Jonathan Guy is an individual residing in Des Moines, Iowa. Between approximately May 2017 to May 11, 2018, Guy worked for Defendant Ford Storage as a delivery driver, performing deliveries of Homemakers furniture.

21. Plaintiff Peter Cooper is an individual residing in Des Moines, Iowa. Between approximately April 2017 to September 2017, Cooper worked for Defendant Ford Storage as a delivery driver, performing deliveries of Homemakers furniture.

22. Plaintiff Tyrone Johnson is an individual residing in Des Moines, Iowa. Between approximately May 2017 to August 2017, Johnson worked for Defendant Ford Storage as a delivery driver, performing deliveries of Homemakers furniture.

23. Plaintiff Anthony Gruber is an individual residing in Des Moines, Iowa. . Between approximately February 2012 to the present, Gruber has worked for Defendant Ford Storage as a delivery driver, performing deliveries of Homemakers furniture.

24. Plaintiff Brian St. Aubin is an individual residing in Madrid, Iowa. Between approximately May 2006 to the present, St. Aubin has worked for Defendant Ford Storage as a delivery driver, performing deliveries of Homemakers furniture.

25. Plaintiff Cody Petek is an individual residing in Urbandale, Iowa. Between approximately November 2016 to June 2017, Petek worked for Defendant Ford Storage as a delivery driver, performing deliveries of Homemakers furniture.

26. Plaintiff Dusty Petek is an individual residing in Johnston, Iowa. Between approximately June 2013 to May 2017, Petek worked for Defendant Ford Storage as a delivery driver, performing deliveries of NFM appliances.

27. Plaintiff Vincent Boothroyd is an individual residing in Ankeny, Iowa. Between approximately April 2008 to August 2017, Boothroyd worked for Defendant Ford Storage as a delivery driver, performing deliveries of Homemakers furniture.

28. Plaintiff Micah Moss is an individual residing in West Des Moines, Iowa. Between approximately April 2016 to the present, Moss has worked for Defendant Ford Storage as a delivery driver, performing deliveries of Homemakers furniture.

29. Plaintiff Eric Irving is an individual residing in Des Moines, Iowa. Between approximately February 2017 to August 2018, Irving worked for Defendant Ford Storage as a delivery driver, performing deliveries of Nebraska Furniture Mart appliances.

30. Plaintiff Ricky Hutchinson is an individual residing in Des Moines, Iowa. Between approximately July 2009 to the present, Hutchinson has worked for Defendant Ford Storage as a delivery driver, performing deliveries of Homemakers furniture.

31. Plaintiff Willie Chism is an individual residing in Johnston, Iowa. Between approximately December 2006 to April 2019, Chism worked for Defendant Ford Storage as a delivery driver, performing deliveries of Homemakers furniture.

32. Plaintiff Chad Porter is an individual residing in Truro, Iowa. Between approximately December 2017 to the present, Porter has worked for Defendant Ford Storage as a delivery driver, performing deliveries of Homemakers furniture.

33. Plaintiff Keith Barnett is an individual residing in Des Moines, Iowa. Between approximately December 2011 to April 2019, Barnett worked for Defendant Ford Storage as a delivery driver, performing deliveries of Homemakers furniture.

34. Plaintiff Jacob Brooks is an individual residing in Urbandale, Iowa. Between approximately October 2015 to September 2017 and from March 2018 to the present, Brooks has worked for Defendant Ford Storage as a delivery driver, performing deliveries of Homemakers furniture.

35. Plaintiff Adam Nelson is an individual residing in Woodward, Iowa. Nelson has worked for Defendant Ford Storage as a delivery driver, performing deliveries of Homemakers furniture, from 2012 to December 2017 and then from August 2019 to the present.

36. Plaintiff Aaron Swales is an individual residing in Altoona, Iowa. Swales worked for Defendant Ford Storage as a delivery driver, performing deliveries of Homemakers furniture, and was classified by Ford Storage for extended periods as both an employee and an independent contractor. From approximately 2014 to December 2016, Swales was classified by Ford Storage as an independent contractor while performing deliveries.

37. Plaintiff Ryan Brockman is an individual residing in West Des Moines, Iowa. Between approximately October 2018 to October 2019, Brooks has worked for Defendant Ford Storage as a delivery driver, performing deliveries of Homemakers furniture.

## STATEMENT OF FACTS

38. NFM is a large retailer that sells furniture, flooring, appliances, and electronics throughout North America.

39. In 2001, NFM purchased Homemakers Furniture. Homemakers Furniture, however, has continued to operate under its own name.

40. Homemakers Furniture operates a store and warehouse in Urbandale, Iowa and, through Ford Storage and its own employee drivers, performs deliveries of furniture to its customers in Iowa out of the warehouse.

41. NFM operated a warehouse in Clive, Iowa until approximately March 2019, when it moved its facility to Waukee, Iowa. Through Ford Storage and its own employee drivers, NFM performs deliveries of appliances to its customers in Iowa to customers in the Des Moines are. NFM and Ford Storage perform deliveries to customers in Iowa who live outside of the Des Moines area from a facility in Omaha, Nebraska.

42. Ford Storage is in the business of providing delivery of retail merchandise for large retail stores, such as NFM and Homemakers. To carry out deliveries, Ford Storage purports to contract with individuals such as the Plaintiffs to drive a delivery truck and to deliver merchandise to the retail stores' customers.

43. To perform this work, Ford Storage requires Plaintiffs and their other delivery drivers to sign an agreement which states that the delivery drivers are independent contractors.

44. Although Defendant classifies Plaintiffs as independent contractors, the reality of the relationship between Defendant and these delivery drivers is one of employment.

45. Moreover, in addition to using Plaintiffs to perform deliveries, Defendant uses workers that it classifies as employees to perform the same or similar deliveries to NFM and

Homemakers customers. For example, prior to contracting with Ford Storage, most of the delivery drivers who contract with Ford Storage are required to spend approximately one month performing deliveries out of the same facility as employees of Ford Storage.

46. The following facts demonstrate that Ford Storage exerts significant control over the work performed by Plaintiffs:

a. Plaintiffs were scheduled to work five to six days a week and were required to give two-weeks notice if they were going to unavailable to work.

b. Plaintiffs were assigned delivery routes by Ford Storage three days in advance and the routes required that the Plaintiffs perform deliveries in the order they were assigned within time windows specified by Ford Storage.

c. Plaintiffs who performed deliveries for Homemakers were required to report to a warehouse maintained by Homemakers in Urbandale, Iowa and to have their trucks loaded and be off the dock by 8:00 a.m., five to six days a week. When the Homemakers drivers were assigned out of town deliveries, they were required to load their trucks the night before and be off the dock by 7:00 a.m.

d. Plaintiffs who performed deliveries for NFM were required to report to the NFM facility in Clive or Waukee and to have their trucks loaded and be off the dock by 9:30 a.m., five to six days a week

e. Plaintiffs who delivered Homemakers merchandise were required by Ford Storage to display Homemakers insignia on trucks they used to perform deliveries.

f. Plaintiffs who delivered NFM merchandise were required by Ford Storage to display NFM insignia on trucks they used to perform deliveries.

g. Plaintiffs who delivered Homemakers merchandise were required to wear a uniform consisting of a Homemakers Furniture shirt, a Homemakers Furniture hat, and brown pants. Homemakers and Ford Storage would fine the Homemakers Plaintiffs if they were caught out of uniform.

h. Plaintiffs who delivered NFM merchandise were required to wear a uniform including an NFM shirt and Ford Storage would fine the NFM Plaintiffs is they were caught out of uniform.

i. Ford Storage required Plaintiffs to conform to Homemakers and Ford Storage rules regarding their appearance and conduct during deliveries.

j. Ford Storage required Plaintiffs to obtain Ford Storage's approval before using anyone to help them perform deliveries. Ford Storage retained the right to prohibit the use of a helper or secondary driver and would fine or terminate Plaintiffs if they used personnel not approved by Ford Storage.

k. Ford Storage unilaterally determined the rates that Plaintiffs are paid for performing deliveries.

l Plaintiffs were required to call customers 30 minutes before each delivery.

m. Plaintiffs were required to log the beginning and end of each delivery.

n. Plaintiffs were required to call NFM, Homemakers, and Ford Storage dispatchers if there was a problem with a delivery and Plaintiffs received phone calls from NFM, Homemakers, and Ford Storage if they were running late for a delivery or there was a customer complaint.

o. Plaintiffs were required to attend meetings with NFM, Homemakers, and Ford Storage supervisors when there were problems with deliveries.

p. Plaintiffs were told by Ford Storage that they could not identify themselves to customers as contractors.

q. Homemakers delivery supervisors routinely relayed instructions for Plaintiffs to follow and Homemakers customers complaints through Ford Storage delivery supervisors.

r. Many of the policies and rules that Plaintiffs were required to follow were dictated by Homemakers in its contract with Ford Storage.

47. If Plaintiffs were sick or otherwise missed a day of work, Ford Storage would have a Ford Storage employee drive their truck and then deduct approximately $200 from the pay of the delivery driver for a “dropped load.”

48. Ford Storage requires delivery drivers that it contracts with to have or lease a truck that meets Ford Storage’s specifications.

49. Ford Storage kept track of Plaintiffs and its other delivery drivers’ performance through the use of customer ratings.

50. When there is damage to the merchandise delivered, Homemakers or NFM pays the customer directly for the damage, then receives a reimbursement from Ford Storage. Ford Storage, in turn, deducts the cost of the damage from Plaintiffs’ compensation.

51. Ford Storage required delivery drivers to obtain insurance, including automobile liability, commercial general liability, cargo liability, commercial umbrella, and worker’s compensation at levels dictated by Ford Storage.

52. Ford Storage required Plaintiffs to list NFM and Ford Storage as additional insured’s on and include a waiver of their right to recover from NFM and Ford Storage on their worker’s compensation policy.

53. Plaintiffs, as well performed work that is integral to the business of Ford Storage – i.e., they perform delivery services -- and Ford Storage is engaged in the business of providing delivery services to its customers.

54. Ford Storage caused deductions to be made from the compensation paid to Plaintiffs for truck damages, which are leased from Ford Storage, damage to customer property, damage to or loss of furniture or merchandise, refunds of customer delivery charges, radio and beeper charges, escrow fund charges, and liability insurance premiums.

55. Ford Storage caused further deductions for items such as $250 for a dropped load, $500 for a dropped load the day before or day after a holiday, $250 for using a non-qualified driver, $250 for using an undocumented helper, $375 for a lost tablet, $30 a day for a missing helper, $50 for failure to turn in a maintenance form, $50 for failing to leave the dock by 8:00 a.m., $50 for being out of uniform, and $25 for failing to properly bag and stack bedding.

56. Ford Storage required Plaintiffs to maintain an escrow fund or reserve fund of approximately $2,000 to cover damage claims.

57. Ford Storage could terminate Plaintiffs for any reason. Indeed, when Plaintiff Guy was terminated, he was told by a Ford Storage manager that it did not require a reason to terminate him.

58. NFM and Homemakers also employed supervisors whose job it was to manage the deliveries performed by Plaintiffs.

## COUNT I
## Violation of the Iowa Wage Payment Collection Law

59. All previous paragraphs are incorporated as though fully set forth herein.

60. Iowa's Wage Payment Collection Law ("WPCL") requires an employer to pay all wages due to its employees. Iowa Code § 91A.5.

61. Defendant Ford Storage is subject to the wage requirements of the WPCL because it is an "employer" under Iowa Code § 91A.2.

62. At all relevant times, Plaintiffs are covered employees entitled to the above-described WPCL protections. Iowa Code § 91A.2.

63. Plaintiffs are not exempt from the requirements of the WPCL for wage payments.

64. Ford Storage, pursuant to its policies and practices, made deductions from Plaintiffs' compensation that violate WPCL. Iowa Code § 91A.5.

65. Pursuant to Iowa Code § 91A.8, an employer, such as Ford Storage, who fails to pay an employee wages in conformance with the WPCL shall be liable to the employee for the wages or expenses that were not paid, interest, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

66. In violating Iowa law, Defendants acted willfully and with reckless disregard of clearly applicable WPCL provisions.

**JURY DEMAND**

Plaintiffs request a trial by jury on all of their claims.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek the following relief on behalf of themselves and all others similarly situated:

a. A declaration that Ford Storage misclassified Plaintiffs as independent contractors instead of employees;

b. Injunctive relief requiring Ford Storage to comply with all applicable federal and state laws and cease their illegal practices;

c. A judgment in favor of Plaintiffs for all penalties and liquidated damages allowed by law;

d. An award of pre-judgment and post-judgment interest to Plaintiffs;

e. An award of attorney's fees and costs as provided by law; and

f. Any other relief to which the Plaintiffs may be entitled.

Dated: November 5, 2019

Respectfully submitted,

JONATHAN GUY, PETER COOPER, TYRONE JOHNSON, ANTHONY GRUBER, BRIAN ST. AUBIN, CODY PETEK, DUSTY PETEK, VINCENT BOOTHROYD, MICAH MOSS, ERIK IRVING, RICKY HUTCHINSON, WILLIE CHISM, CHAD PORTER, JACOB BROOKS, KEITH BARNETT, ADAM NELSON, AARON SWALES, and RYAN BROCKMAN

By their attorneys,

*/s/Benjamin J. Weber*
Harold Lichten (admitted pro hac vice)
Benjamin J. Weber (admitted pro hac vice)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile: (617) 994-5801
hlichten@llrlaw.com
bjweber@llrlaw.com

Nate Willems
RUSH & NICHOLSON, P.L.C.
P.O. Box 637
Cedar Rapids, IA 52406
319-363-5209
Fax: 319-363-6664
nate@rushnicholson.com

Sarah R. Schalman-Bergen (admitted pro hac vice)
Camille Fundora (admitted pro hac vice)
BERGER MONTAGUE PC

1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-3000
(215) 875-4620
sschalman-bergen@bm.net
crodriguez@bm.net

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon all counsel of record through the Court's ECF system this 5th day of November, 2019.

*/s/Benjamin J. Weber*
Benjamin J. Weber