IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JONATHAN GUY, et al.,<br>　　　　Plaintiffs,<br>vs.<br>FORD STORAGE & MOVING CO.,<br>　　　　Defendant. | No. 4:18-cv-216-JAJ-RAW<br><br>**ORDER** |

　　　　This action arises from Plaintiffs' alleged employment relationship with Defendant. This matter is before the Court on summary judgment. Defendant submitted a Motion for Summary Judgment as to all claims on November 16, 2020, and Plaintiffs moved for partial summary judgment as to their employment status on November 17, 2020. Def.'s Mot. Summ. J., ECF No. 119; Pls.' Mot. Partial Summ. J., ECF No. 121. Defendant responded to Plaintiffs' Motion on December 14, 2020, and Plaintiffs responded to Defendant's Motion on December 17, 2020. Def.'s Opp. Pls.' Mot. Partial Summ. J., ECF No. 129; Pls.' Opp. Def.'s Mot. Summ. J., ECF No. 133. Plaintiffs replied on December 22, 2020, and Defendant replied on December 30, 2020. Pls.' Reply Supp. Pls.' Mot. Partial Summ. J., ECF No. 134; Def.'s Reply Br. Supp. Def.'s Mot. Summ. J., ECF No. 139. For the reasons that follow, Defendant's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**, and Plaintiffs' Motion for Summary Judgment is **DENIED**.

### I.　　Background

　　　　This factual background is drawn from the parties' submissions in support of and in resistance to Defendant's Motion for Summary Judgment and Plaintiffs' Motion for Summary Judgment. In particular, the Court focuses on the admitted portions of each party's response to the other party's statement of facts. Def.'s Resp. Pls.' Statement Facts, ECF No. 129-1; Pls.' Resp. Def.'s Statement Facts Supp. Def.'s Mot. Summ. J., Ex. A, ECF No. 133; Def.'s Reply Pls.' Opp. Def.'s Statement Facts & Resp. Pls.' Counterstatement Facts, ECF No. 139-1. Unless identified otherwise, the facts stated here are undisputed.

　　　　Ford Storage & Moving Co. ("Ford Storage") is a motor carrier providing services to a wide array of clients. Ford Storage provides home delivery services of furniture and appliances

purchased by customers of Homemakers Furniture in Urbandale, Iowa and Nebraska Furniture Mart in Clive, Iowa. To provide these services, Ford Storage uses delivery drivers. Some delivery drivers are Ford Storage employees while others are independent contractors ("contract drivers"). Delivery drivers operate two-man trucks to haul and deliver furniture and appliances.

Most of the Plaintiffs were initially hired and classified as employees; however, Plaintiffs all worked as contract drivers for Ford Storage at some point in time after July 2, 2016. As contract drivers, Plaintiffs operated their commercial vehicles under Ford Storage's motor carrier operating authority and DOT number. Upon becoming contract drivers, each Plaintiff received and signed an Independent Trucking Agreement ("ITA") and a Motor Vehicle Lease Agreement with Ford Storage. The ITA contains several provisions that are relevant to the parties' motions.

The ITA begins as follows:

> WHEREAS, Company is a common and/or contract carrier by motor vehicle authorized by the Interstate Commerce Commission to transport furniture, furnishings, fixtures, equipment and miscellaneous products, and from time to time, has occasion to use motor vehicles owned or leased and operated by independent contracts, and
>
> WHEREAS, Contract[or] is the owner and/or lessee of certain motor vehicle(s) hereinafter described and desires to furnish said motor vehicle(s) and/or to have same driven for Company in connection with the aforesaid business, and
>
> NOW, THEREFORE, in consideration of the mutual promise[s] herein contained, the parties do hereby agree as follows:

Def.'s App. Supp. Mot. Summ. J. 01745, Ex. 22, ECF No. 119-44 at 7.

Section 1 of the ITA requires contract drivers to furnish a vehicle, equipment, and the manpower to operate the vehicle and make deliveries at the contractor's expense. Def.'s App. 01745, Ex. 22, ECF No. 119-44 at 7. Although the ITA does not explicitly state size specifications for the truck, the trucks generally needed to have a 26-foot box. The ITA does not require contractors to lease a truck from a specific lessor. The ITA further states:

> 2.   COMPANY INSIGNIA:  Contractor agrees to affix and keep affixed on said vehicle such symbols, insignia, and other identification as are from time to time specified by Company while Contractor is performing services under this Agreement.  Company will pay for the initial cost of such symbols, insignia and other identification on Contractor's vehicle.  Company will also pay $0, per month to Contractor as a billboard rental fee for carrying the Company insignia. Such symbols, insignia, and other identification must be covered when

Contractor is not performing services under this Agreement. Company will pay for the removal of such symbols, insignia, and other identification upon the termination of this Agreement. The Contractor will be responsible for maintaining the logo on the vehicle in good condition and pay the cost to repair due to any damage or normal wear. Delivery vehicles must be clean and in good repair.

. . .

4. DRIVERS AND HELPERS: Contractor at its option may hire, and thereby be responsible for, at its own expense, one or more drivers and/or helpers (if required) to perform loading, driving, unloading and other accessorial services. Contractor shall be solely responsible for the hiring, firing, discipline, supervision, direction and control of its employees, agents or servants, including, but not limited to, determining and setting their wages, benefits, hours and working conditions, and adjusting their grievances. Contractor is responsible for all applicable statutory payroll deductions including but not limited to worker's compensation, unemployment and federal and state income tax. It is understood and agreed that Company has no control over Contractor's employees.

Notwithstanding the foregoing and in the interest of greater safety and proper performance, Contractor agrees to require all of its drivers (and helpers, to the extent permitted by law) to submit to a criminal background check and drug test at a laboratory designated by Company as a precondition of those individuals providing services to Company hereunder and to require its drivers, helpers, employees, agents and servants to abide by the requirements of the Ford Storage and Moving Co. contractors handbook.. A copy of which has been provided to contractor and is incorporated herein by this reference. The results of such criminal background check and drug test shall be provided to Company prior to such Employee of Contractor commencing work for Contractor. Company may refuse to allow Contractor to provide services pursuant to this Agreement using an Employee whose background check or drug tests were unsatisfactory to Company. Contractor shall, prior to providing services hereunder, furnish copies to Company of valid commercial driver's licenses for all drivers providing services hereunder. Additionally, Contractor shall furnish the name, date of birth, social security number, Commercial Drivers' License number and state of issuance to Company so as to enable Company to obtain a Division of Motor Vehicle Record for each driver providing services hereunder. If the Record of a driver(s) is below Company's standards, Company may so advise Contractor and Contractor shall immediately cease using such driver(s) in providing services hereunder. Contractor shall furnish the name, date of birth, social security number and address of all helpers employed by Contractor. Failure of Contractor to comply with the requirements of

this paragraph shall subject Contractor to immediate termination of this Agreement.

5. CONTRACTOR'S DISCRETION: Contractor may accept or refuse any particular load for transportation at its entrepreneurial discretion. Contractor may choose days and hours which it will operate. Contractor may select its own routes over which to transport goods, rest stops, and gas and oil stops, although it must abide by the time frames as established by Company and its clients' customers.

6. NO GUARANTEE OF WORK: Contractor understands and agrees that Company does not guarantee any minimum number of loads for transportation. When work is not available there will be no minimum payments made to Contractor.

7. VEHICLE OPERATING EXPENSE AND MAINTENANCE: Contractor agrees to assume and pay all direct costs and expenses incident to the operation of the vehicle hereunder, including, but not restricted to, driver and helpers, oil, fuel, tolls, repairs, ferries, phone calls, and fines for traffic violations. Any repairs not covered under a lease agreement shall be at Contractor's expense. Contractor agrees to maintain and keep in good mechanical condition said vehicle, to keep same washed and clean and to carry thereon and properly maintain all safety equipment and accessories required by law.

8. UNIFORMS: Contractor shall, at its own expense, furnish and maintain proper uniforms for all drivers and helpers. Company shall furnish emblems therefore and Contractor shall affix such emblems to the uniforms. These uniforms will only be required for Contractor's employees if they are required by Company's clients and shall comply with requirements of Company's clients. Such uniforms and emblems shall be worn only while Contractor and its agents or employees are performing services pursuant to this Agreement.

9. APPEARANCE AND CONDUCT: Drivers and helpers must conform to the standards of appearance and conduct as required by Company and Company's clients.

Def.'s App. 01745–47, Ex. 22, ECF No. 119-44 at 7–9. Notably, the ITA also states, "[T]he parties intend to create a relationship of Company and Independent Contractor and not that of Employer and Employee, partners or joint ventures. Contractor understands the Contractor is an independent contractor." Def.'s App. 01752, Ex. 22, ECF No. 119-44 at 14.

Ford Storage paid employee drivers a daily rate, whereas Plaintiffs were paid based on the number of deliveries they made. Ford Storage would not negotiate Plaintiffs' per-stop rate of pay; however, Plaintiffs were paid extra amounts for various services, such as assembling furniture, hauling away old furniture, etc. Ford Storage paid for the truck rental, helpers, insurance, gas,

4

uniforms, and all truck-related expenses for employee drivers. Ford Storage did not deduct any fines or claims from employee drivers' wages. Contract drivers, like the Plaintiffs, were held financially responsible for any merchandise that was damaged during a delivery and any damage caused to a customer's home during a delivery. If Plaintiffs could not afford repairs or other maintenance on their trucks, Ford Storage would occasionally pay for the maintenance and Plaintiffs would pay Ford Storage back from their settlement checks. Plaintiffs were required to obtain insurance at specific levels. Ford Storage could terminate them or withhold their pay if they failed to do so.

Plaintiffs seek summary judgment on their employment status, and Defendant seeks summary judgment on all of Plaintiffs' claims. Alternatively, Defendant asks the Court to find Plaintiffs cannot recover damages for truck lease payments, repair payments for the leased trucks, and insurance payments.

## II.     Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense—or part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). It provides, further, that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. The Eighth Circuit Court of Appeals explained:

> "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Celotex Corp*., 477 U.S. at 324, 106 S.Ct. 2548). "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

*Mensie v. City of Little Rock*, 917 F.3d 685, 688 (8th Cir. 2019).

More specifically, "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" *Villanueva v. City of Scottsbluff*, 779 F.3d

5

507, 510 (8th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). Once the parties have met their burdens, the court may grant summary judgment only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Torgerson*, 643 F.3d at 1042–43 (internal quotation marks and citations omitted). Also, "'[w]here . . . the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Ritchie Capital Mgmt., LLC v. Stoebner*, 779 F.3d 857, 861 (8th Cir. 2015) (quoting *In re Cochrane*, 124 F.3d 978, 981–82 (8th Cir. 1997)).

### III.   Analysis

#### A.  Employment Status: Independent Contractor v. Employee

The parties' arguments revolve around Plaintiffs' employment status with Ford Storage. Defendant alleges Plaintiffs were independent contractors, whereas Plaintiffs contend they were employees. Iowa law governs the determination of whether a worker is an independent contractor or an employee. "[T]he primary focus is the extent of control by the employer over the details of the alleged employee's work."[1] *Iowa Mut. Ins. Co. v. McCarthy*, 572 N.W.2d 537, 542 (Iowa 1997). The Iowa Supreme Court has outlined several other relevant factors that are considered when analyzing an individual's employment status. *Id.* (citing *Peterson v. Pittman*, 391 N.W.2d 235, 237 (Iowa 1986)). Specifically, the Iowa Supreme Court noted:

> In *Peterson*, this court considered (1) who had the right to control the physical conduct of the work, (2) whether the purported employee was on the employer's payroll, and (3) who provided the equipment to accomplish the work. 391 N.W.2d at 238. In *Nelson* [*v. Cities Serv. Oil Co.*, 259 Iowa 1209, 146 N.W.2d 261 (1966)], we considered the five-factor test, [which looks at (1) the right of selection, or to employ at will, (2) responsibility for payment of wages by the employer, (3) the right to discharge or terminate the relationship, (4) the right to control the work, and (5) the identity of the employer as the authority in charge of the work or for whose benefit it is performed], for determining the existence of an employer/employee relationship, and eight additional factors bearing on the person's status as an independent contractor:
>
>> "(1) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price; (2) independent nature of his business or of his distinct calling; (3) his employment of

---

[1] This standard is consistent with the Court's previous order. Plaintiffs contend the primary consideration in this analysis is the *right to control* rather than the *extent of control*. The Court sees no reason to depart from the standard it adopted in ruling on Defendant's previous motion for summary judgment. [ECF No. 74 at 30].

> assistants, with the right to supervise their activities; (4) his obligation to furnish necessary tools, supplies, and materials; (5) his right to control the progress of the work, except as to final results; (6) the time for which the workman is employed; (7) the method of payment, whether by time or by job; (8) whether the work is part of the regular business of the employer."
>
> 259 Iowa at 1215, 146 N.W.2d at 264–65 (*quoting Mallinger v. Webster City Oil Co.*, 211 Iowa 847, 851, 234 N.W. 254, 256 (1931)). And, in every case where the issue was whether the person was an employee or an independent contractor, the court weighed the parties' intention as it reflected upon the employment relationship. *See, e.g., D & C Express, Inc.* [*v. Sperry*], 450 N.W.2d [842,] 844 [(Iowa 1990)] (stating intention of the parties is another factor in determining the nature of the parties' employment relationship); *LaFleur* [*v. LaFleur*], 452 N.W.2d [406,] 409 [(Iowa 1990)] (stating intent "is an important consideration in determining what sort of relationship the parties created"); *Nelson*, 259 Iowa at 1216, 146 N.W.2d at 265 (stating "the intention of the parties as to the relationship created or existing" is "another possible element").

*McCarthy*, 572 N.W.2d at 542–43.

Ford Storage refers to undisputed evidence that weighs in its favor on several of the factors considered in determining Plaintiffs' employment status. The ITA explicitly states the intent of the parties is for Plaintiffs to be independent contractors. While intent is not the controlling factor in the Court's analysis, it is relevant. *See id.* at 542 (citations omitted). The ITA suggests Plaintiffs were not on Ford Storage's payroll and that Ford Storage did not provide Plaintiffs with any health benefits, sick leave, etc. It also indicates Plaintiffs had the right to control the physical conduct of their work and that Plaintiffs were required to furnish their own equipment. Plaintiffs purchased their own uniforms and some of the Plaintiffs purchased and used their own dollies to complete their deliveries. Plaintiffs made decisions and employed different delivery strategies when faced with difficult deliveries. Further, there is evidence that Plaintiffs occasionally refused to deliver certain items.

Some of the additional factors also suggest Plaintiffs were independent contractors. ITA indicates the parties contracted for the Plaintiffs to perform a specific kind of work at a fixed price, and Plaintiffs were compensated per delivery. The ITA also suggests that Plaintiffs had the right to hire and supervise their own helpers and to determine when and how their helpers were paid. Plaintiffs decided to pay their helpers different amounts, and Plaintiffs also supervised their helpers and directed them when to arrive for work.

Other factors weigh in Plaintiffs' favor. There is evidence Plaintiffs' control over the performance of their work was illusory. Ford Storage required Plaintiffs to display the Homemaker's insignia on their trucks but did not pay for this privilege. Ford Storage retained veto power over proposed helpers who failed a background check or drug test. There is also evidence Ford Storage exercised authority over Plaintiffs' helpers by requiring the helpers to conform to a standard of conduct and appearance. Other evidence suggests Ford Storage set Plaintiffs' work hours and delivery windows and reserved the right to inspect Plaintiffs' trucks. There is also evidence that Ford Storage tracked Plaintiffs' progress throughout the day and maintained logs or reports on Plaintiffs' performance. These reports or logs tracked Plaintiffs' performance, customer complaints, deliveries completed outside the specified delivery window, number of times Plaintiffs appeared out of uniform, left the dock late, and left the bay unclean. There is also evidence Ford Storage counseled Plaintiffs if their performance did not rise to Ford Storage's expectations.

As such, the Court concludes a genuine issue of material fact exists as to Plaintiffs' employment status. Summary judgment is unwarranted.

### B. IWPCL: Wages and Deductions

The Court next determines whether the funds Ford Storage deducted from Plaintiffs' settlement checks for truck repair payments, lease payments, and insurance payments were lawful deductions from wages under the IWPCL. Statutory interpretation is a question of law within the province of the Court. *Clay Cnty. v. Pub. Emp't Relations Bd.*, 784 N.W.2d 1, 4 (Iowa 2010). "Wages" is defined under the IWPCL as "compensation owed by an employer for: a. Labor or services rendered by an employee, whether determined on a time, task, piece, commission, or other basis of calculation. . . ." Iowa Code § 91A.2(7)(a) (2021). The IWPCL prohibits employers from withholding or diverting an employee's wages unless an exception applies. *Id.* § 91A.5(1). An employer may withhold or divert an employee's wages if "[t]he employer has written authorization from the employee to so deduct for any lawful purpose accruing to the benefit of the employee." *Id.* § 91A.5(1)(b). "Benefit" within the meaning of the IWPCL encompasses more than strictly tangible, financial benefits. *Ferezy v. Wells Fargo Bank, N.A.*, 755 F. Supp. 2d 1010, 1013–14 (S.D. Iowa 2010) (citations omitted) (considering whether charitable donations deducted from employees' wages accrued to the employees' benefit). The dictionary definitions of "accrue" and "benefit" support a finding that deductions may accrue to the benefit of the employee even when the benefit is intangible and non-financial. *Id.* at 1015–17 (concluding charitable donations

8

deducted from employees' wages accrued to the benefit of the employees). When considering the legality of a deduction, "what an employee considers the benefit is irrelevant, as long as there is a possible benefit in authorizing the employer to so deduct." *Id.* at 1017. Independent contractors are not employees under the IWPCL. Iowa Code § 91A.2(3)(c).

For the purpose of this analysis, the Court will assume Plaintiffs are employees within the meaning of the IWPCL. Defendant contends the funds it deducted from Plaintiffs' settlement checks for truck lease payments, truck repair payments, and insurance premiums were not wages as defined in the IWPCL.[2] Defendant also argues these were lawful, authorized deductions under the IWPCL.

First, the Court considers whether the funds Ford Storage deducted from Plaintiffs' settlement checks for truck repair payments, lease payments, and insurance payments were wages under the IWPCL. The Court concludes the deducted funds, apart from funds deducted for workers' compensation premiums, were not wages because the funds were not owed to Plaintiffs. *See* Iowa Code § 91A.2(7)(a). Chapter 91A does not define "owed;" however, the plain meaning of the term involves an obligation to pay. *Owe*, Merriam-Webster, https://www.merriam-webster.com/dictionary/owe (last visited Feb. 16, 2021). Ford Storage was not obligated to pay Plaintiffs the deducted funds because it did not owe these expenses and they were deducted solely for the convenience of the driver. As such, the funds were never owed to Plaintiffs. However, funds deducted for workers' compensation premiums were owed to Plaintiffs despite Plaintiffs' authorization to withhold them. Agreements in which an employee must pay workers' compensation premiums are null and void under Iowa law. Iowa Code § 85.54 (2021). Therefore, Plaintiffs could not validly authorize Ford Storage to refrain from paying them these funds and the amounts were owed to Plaintiffs as wages. *See id.*

Next, although the Court concludes that most of the deducted amounts were not wages, the Court will also consider the lawfulness of all of the deductions. The Court concludes the deductions, apart from those for workers' compensation premiums, were lawful. Plaintiffs provided written authorization for all of these deductions in the ITA. Def.'s App. 01748–49, Ex.

---

[2] Defendant also argues the alleged amount of wages due must be provided by something other than the IWPCL and that Plaintiffs have not cited an independent basis for their argument that the damages they seek are "wages." ECF Nos. 119-2 at 25–26 (quoting *Bouaphakeo v. Tyson Foods*, 564 F. Supp. 2d 870, 884 n.9 (N.D. Iowa 2008)), 139 at 5–6. Plaintiffs do not respond to this argument. Regardless, the Court assumes the ITA and its attached rate schedule provide the basis for Plaintiffs' wage claim.

22, ECF No. 119-44 at 10–11. The ITA specifically states compensation will be paid to Plaintiffs less any amounts owed to Ford Storage. Def.'s App. 01748, Ex. 22, ECF No. 119-44 at 10. The ITA also provides that Ford Storage may advance payments on Plaintiffs' behalf and then deduct the advanced amounts from Plaintiffs' settlement checks. Def.'s App. 01748–49, Ex. 22, ECF No. 119-44 at 10–11. Further, the ITA explicitly states:

> It is further understood and agreed that [Ford Storage] is expressly authorized to deduct from Contractor's settlement charge[s] made for, but not limited to, truck damages, damages to customer property, damage to or loss of furniture or merchandise, refunds of customer delivery charges, lost, stolen or otherwise unaccounted for C.O.D.'s radio and beeper charges, escrow fund restoration charges, and liability insurance premiums.
>
> If the vehicle(s) described in this Agreement is the subject of a lease-purchase agreement, Contractor consents that [Ford Storage] may make payments directly to the lessor . . . such sums to be deducted from Contractor's settlement.

Def.'s App. 01748–49, Ex. 22, ECF No. 119-44 at 10–11.

Based on the ITA, Ford Storage had written authorization to deduct truck repair payments, lease payments, and insurance payments from Plaintiffs' wages. However, Plaintiffs' written authorization to deduct any insurance premiums for workers' compensation is invalid. *See* Iowa Code § 85.54 ("Any contract of employment . . . whereby the employee is required to pay any premium or premiums for insurance against the compensation provided for in this [Workers' Compensation] chapter, shall be null and void . . . ."). As such, if Plaintiffs are employees rather than independent contractors, they cannot validly authorize deductions from their settlement checks for workers' compensation premiums.

Moving to the lawful purpose requirement, the Court finds the deductions for truck repairs, lease payments, and insurance premiums, apart from workers' compensation premiums, were for a lawful purpose. These deductions were made for the lawful purpose of fulfilling Plaintiffs' obligations under the ITA and for Plaintiffs' convenience. However, deductions for workers' compensation premiums were not made for a lawful purpose because Iowa law explicitly prohibits employers from requiring employees to pay workers' compensation premiums. *See id.*

Next, the Court considers whether these deductions accrued to Plaintiffs' benefit. The Court concludes all of these deductions, apart from deductions for workers' compensation premiums, accrued to Plaintiffs' benefit. As a general matter, Plaintiffs must have found some

10

benefit in authorizing these deductions or they would not have done so. *See Ferezy*, 755 F. Supp. 2d at 1016–17 ("Considering a rational person endowed with common sense, an employee who voluntarily authorizes . . . deductions from his paycheck must find some benefit in doing so, and the benefit may be tangible, financial, abstract, psychological, somatic, or otherwise." (citation omitted)). More specifically, as to the truck repair deductions, Plaintiffs were responsible for the maintenance of their trucks and these deductions helped Plaintiffs keep their trucks operational. Plaintiffs also benefitted from these deductions because Ford Storage would advance the repair costs interest-free, meaning Plaintiffs could avoid taking out interest-based loans for truck repairs. Additionally, Plaintiffs received the intangible benefit of the convenience of the availability of this option.

As to the truck lease deductions, Plaintiffs were obligated to make lease payments to Sapp Brothers and these funds went directly to fulfilling Plaintiffs' obligation. Plaintiffs also benefitted from the convenience of having Ford Storage deduct their lease payments from their settlement checks and paying Sapp Brothers on their behalf. As to the insurance premium deductions, these deductions, apart from the workers' compensation premiums, accrued to Plaintiffs' benefit. Plaintiffs were responsible for maintaining specific levels of insurance. The deductions for insurance premiums went directly to fulfilling this obligation. Plaintiffs also benefitted from the convenience of having Ford Storage deduct their insurance payments from their settlement checks and paying the insurer on their behalf. However, deductions for workers' compensation premiums did not accrue to Plaintiffs' benefit because the deductions were done in violation of Iowa law. *See* Iowa Code § 85.54.

Finally, the Court notes Defendant's contention that Plaintiffs seek a windfall contrary to the remedial purpose of the IWPCL. Although Plaintiffs may seek a windfall, it does not change the outcome of the Court's analysis.

## IV.   Conclusion

The Court concludes there is a genuine issue of material fact as to Plaintiffs' employment status. As such, summary judgment on this issue is inappropriate. The Court also concludes that Plaintiffs cannot recover damages for deductions for truck lease payments, truck repairs, and insurance premiums for auto liability coverage, physical damages coverage, and general liability coverage under the IWPCL. Further, the Court concludes Plaintiffs may be able to recover damages for deductions for workers' compensation premiums if they are found to be employees.

Upon the foregoing,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [ECF No. 119] is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment [ECF No. 121] is denied.

**DATED** this 1st day of March, 2021.

_____
JOHN A. JARVEY, Chief Judge
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA